IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-cr-286-TES-JTA |
| | ) | (WO) |
| TERRANCE TOBIAS TENNILLE | ) | |
| | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Defendant Terrance Tobias Tennille's motion to suppress (Doc. No. 117), which was orally amended.[1] Tennille seeks to suppress wire and electronic communications that were intercepted by the Drug Enforcement Administration ("DEA") pursuant to court orders issued under Title III of the Omnibus Crime Control and Safe Street Act of 1968 ("Title III"). After due consideration of the parties' arguments, evidence and applicable law, the undersigned concludes the motion to suppress, as amended, is due to be denied.

## I.    PROCEDURAL HISTORY

A federal grand jury returned a multi-count indictment against eight defendants on July 16, 2024. (Doc. No. 1.) Tennille was listed as one of the eight.[2] Tennille is charged with a controlled substance conspiracy in violation of 21 U.S.C. § 846, with the other seven

---

[1] The motion was orally amended during the evidentiary hearing. (Doc. No. 202, Tr. at 6, 18.)

[2] The other seven co-defendants are Christopher Demon Holloway, Rasha Tenall Patterson, Christopher Bernard Adams, Jessie Devose, Kendrick Yarnell Wilson, Reginald Moultry, and Anthony Antonio Caffie.

defendants. Tennille pleaded not guilty to the charge at arraignment. (Docs. No. 64, 70, 82.)

Tennille filed the instant motion on December 2, 2024. (Doc. No. 117.) The Government filed a response to the motion (Doc. No. 150, SEALED), and Tennille filed a reply (Doc. No. 165.) The undersigned conducted an evidentiary hearing on the motion on January 6, 2025. (Doc. No. 202, Tr.) During the hearing, Tennille amended his motion to suppress. Due to the amendment, the Government provided supplemental briefing. (Doc. No. 192.)

The motion is ripe for review.

## II.    FINDINGS OF FACT[3]

During the evidentiary hearing, the court heard testimony from one witness: Ethan Wiggins.[4] Wiggins is a police officer employed by the city of Eufaula and a full-time task force officer to the DEA Montgomery resident office. Wiggins has been a DEA task force officer since 2016.[5] The testimony and evidence adduced at the hearing establish the following facts.

At some point prior to September 2021, DEA commenced an investigation of Tennille's co-defendant, Anthony Caffie, and his drug trafficking organization ("DTO") in

---

[3] The undersigned reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citation omitted). The undersigned is mindful that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).
[4] The Government presented the testimony of Wiggins. (Doc. No. 202, Tr. 2, 21.)
[5] (Doc. No. 202, Tr. 22.) Wiggins' responsibly is to investigate federal drug crimes, and he has experience requesting and utilizing Title III authorizations. (Doc. No. 202, Tr. 22.)

Pike County. Wiggins became involved in the investigation in late 2021. Wiggins had three predecessors in the investigation.[6] Wiggins and his predecessors obtained four authorizations to intercept wire and electronic communications in the investigation.[7] Each authorization permitted interceptions of communications for thirty days.[8] The timeline for each authorization is listed below.

> **First Authorization**: The court issued an order authorizing the interception of communications for Target Telephone 1 on September 17, 2021.[9] Interception began on September 17, 2021, and continued until October 16, 2021.[10] On October 21, 2021, the court entered an order sealing the recordings of the intercepted communications.[11]
>
> **Second Authorization**: The court issued an order authorizing the interception of communications for Target Telephone 1 and Target Telephone 2 on November 10, 2021.[12] Interception began on November 12, 2021, and continued until December 11, 2021.[13] On December 17, 2021, the court entered an order sealing the recordings of the intercepted communications.[14]
>
> **Third Authorization**: The court issued an order authorizing the interception of communications for Target Telephone 2 and Target Telephone 3 on December 27, 2021.[15] Interception began on December 27, 2021, and continued until January 26, 2022.[16] On

---

[6] These predecessors are former DEA task force officers Chase Avant, Jim Ranson and Ty Ray. (Doc. No. 202, Tr. at 23.)

[7] Wiggins was the affiant for only the Fourth Authorization. (Doc. No. 202, Tr. 24.) The Government did not admit into evidence any affidavits presented to the court in support of the applications for Title III authorizations.

[8] (Doc. No. 202, Tr. 45.) The time for the 30-day interception period begins when the actual interception begins. (Doc. No. 202, Tr. 34-35.)

[9] (Doc. No. 202, Tr. 25; Gov. Ex. 1, SEALED.)

[10] (Doc. No. 202, Tr. 26; Gov. Ex. 2, SEALED.)

[11] (Doc. No. 202, Tr. 30; Gov. Ex. 3, SEALED.)

[12] (Doc. No. 202, Tr. 34; Gov. Ex. 4, SEALED.)

[13] (Doc. No. 202, Tr. 25; Gov. Ex. 5, SEALED.)

[14] (Doc. No. 202, Tr. 35; Gov. Ex. 6, SEALED.)

[15] (Doc. No. 202, Tr. 35-36; Gov. Ex. 7, SEALED.)

[16] (Doc. No. 202, Tr. 35-36; Gov. Ex. 8, SEALED.)

January 28, 2022, the court entered an order sealing the recordings of the intercepted communications.[17]

**Fourth Authorization**: The court issued an order authorizing the interception of communications for Target Telephone 3 and Target Telephone 4 on January 26, 2022.[18] Interception began on January 26, 2022, and continued until February 24, 2022.[19] On March 2, 2022, the court entered an order sealing the recordings of the intercepted wire communications.[20]

Target Telephone 1 was utilized by co-defendant Caffie,[21] Target Telephone 2 was utilized by co-defendant Devose,[22] Target Telephone 3 was utilized by co-defendant Patterson,[23] and Target Telephone 4 was utilized by co-defendant Holloway.[24] Tennille was intercepted only from Target Telephone 2 in the communications he had with co-defendant Devose.[25]

At the outset, Tennille was not included in the DEA's investigation of the Caffey DTO.[26] DEA had knowledge of the phone number Tennille was using and of his general involvement in drug trafficking prior to the First Authorization.[27] However, during the First

---

[17] (Doc. No. 202, Tr. 36; Gov. Ex. 9, SEALED.)

[18] (Doc. No. 202, Tr. 36-37; Gov. Ex. 10, SEALED.)

[19] (Doc. No. 202, Tr. 36-37; Gov. Ex. 11, SEALED.)

[20] (Doc. No. 202, Tr. 37-38; Gov. Ex. 12, SEALED.)

[21] (Doc. No. 202, Tr. 25, 34; Gov. Ex. 3, SEALED.)

[22] (Doc. No. 202, Tr. 34; *see* Gov. Ex. 7, SEALED.)

[23] (Doc. No. 202, Tr. 37; *see* Gov. Ex. 7, SEALED.)

[24] (Doc. No. 202, Tr. 37; *see* Gov. Ex. 10, SEALED.)

[25] (Doc. No. 202, Tr. 34.) It is worth noting Wiggins testified inconsistently regarding whether Tennille was intercepted on Target Telephone 3. (Doc. No. 202, Tr. 26, 35-36, 87.) Wiggins testified clearly that Tennille was associated with Target Telephone 2 and not intercepted over Target Telephone 1 or Target Telephone 4. (Doc. No. 202, Tr. 26, 36, 37, 99.) Based upon the evidence in the record and for the purpose of resolving the motion to suppress, the undersigned relies upon Wiggins' repeated testimony that Tennille was only intercepted in communications with co-defendant Devose. (*See* Doc. No. 202, Tr. 87, 95, 99-100.)

[26] (Doc. No. 202, Tr. 86-88, 99-100.)

[27] (Doc. No. 202, Tr. 86-87.)

4

Authorization, DEA identified Target Telephone 2 as being involved in the Caffey DTO.[28]
Through toll analysis, DEA determined that Tennille was a telephone user in contact with
co-defendant Devose on Target Telephone 2.[29] At that time, DEA had no knowledge of the
substance of the relationship between Tennille and co-defendant Devose.[30] Once the
communications for Target Telephone 2 were intercepted during the Second Authorization,
DEA learned Tennille was buying cocaine from co-defendant Devose.[31] Co-defendant
Devose was the only co-defendant with whom Tennille communicated during the
investigation.[32]

Although Wiggins monitored the intercepted communications in Montgomery, the
original recordings of the intercepted communications were not maintained in
Montgomery.[33] The intercepted communications were conducted and maintained in New
Orleans, Louisiana, at the headquarters of the field division.[34] The headquarters covers the
states of Alabama, Mississippi, Louisiana and Arkansas.[35] For the relevant period, the
technical operations for all interceptions were handled by DEA technology specialist
Verdell Stone in New Orleans.[36]

---

[28] (Doc. No. 202, Tr. 99.)
[29] (Doc. No. 202, Tr. 85, 99-100.)
[30] (*Id.*)
[31] (Doc. No. 202, Tr. 85.)
[32] (Doc. No. 202, Tr. 95.)
[33] (Doc. No. 202, Tr. 26-27, 83.)
[34] (*Id.*)
[35] (Doc. No. 202, Tr. 27.)
[36] (Doc. No. 202, Tr. 28, 41, 83.)

Stone handled, among other things,[37] the process of compiling the original recordings of the intercepted communications and shipping them to each field office.[38] Stone's process entailed receiving notification from his system when an interception expires[39] and transferring the data onto an original disk.[40] Stone places the original disk into an evidence bag, seals the bag, and then mails the disk overnight via FedEx to the appropriate field office.[41] Once the DEA agent or task force officer receives the disk, that agent or officer coordinates with the federal prosecutor to have the disk sealed by the court.[42] After sealing, the disk is stored locally at the Montgomery DEA facility.[43] That same process has taken place since 2016.

The timeline for the receipt of the original disks and sealing of the same is below.

> **First Authorization**: The interception ended on October 16, 2021.[44] DEA in Montgomery received the original recording disk on October 20, 2021.[45] On October 21, 2021, the court entered an order sealing the recordings of the intercepted communications.[46]

---

[37] For example, Stone ensures the original recordings are secured in New Orleans. (Doc. No. 202, Tr. 29.) The raw data is stored on a server which is kept behind a locked door and secured by an alarm. (*Id.*) The servers are encrypted and tamper proof. (*Id.*) If the recordings are compromised or tampered with in any way, Stone would be able to recognize such action. (*Id.*) There is no evidence here that the recordings for the four authorizations were subjected to tampering. (*Id.*)

[38] (Doc. No. 202, Tr. 28.)

[39] The interceptions expire on midnight of the last day of authorization. (Doc. No. 202, Tr. 38.)

[40] (Doc. No. 202, Tr. 28.)

[41] (Doc. No. 202, Tr. 28, 30.)

[42] (Doc. No. 202, Tr. 28, 41, 101-102.) The disk is sealed by the court through the following process: (1) the DEA agent or task force officer transports the disk to the judge's chambers; (2) the agent or task force officer then places the disk into an evidence envelope and seals it, which is witnessed by the judge; (3) the envelope is signed, and (4) the agent or task force officer transports the disk back to the Montgomery office. (Doc. No. 202, Tr. 33.)

[43] (Doc. No. 202, Tr. 31.)

[44] (Doc. No. 202, Tr. 26; Gov. Ex. 2, SEALED.) October 16 was a Saturday. (Doc. No. 202, Tr. 79.)

[45] (Doc. No. 202, Tr. 30, 78.)

[46] (Doc. No. 202, Tr. 30.)

**Second Authorization**: The interception ended on December 11, 2021.[47] DEA in Montgomery received the original recording disk on December 16, 2021.[48] On December 17, 2021, the court entered an order sealing the recordings of the intercepted communications.[49]

**Third Authorization**: The interception ended on January 26, 2022.[50] DEA in Montgomery received the original recording disk on January 27, 2022.[51] On January 28, 2022, the court entered an order sealing the recordings of the intercepted communications.[52]

**Fourth Authorization**: The interception ended on February 24, 2022.[53] DEA in Montgomery received the original recording disk on March 2, 2022.[54] On March 2, 2022, the court entered an order sealing the recordings of the intercepted wire communications.[55]

The seals for the four disks remain intact and do not show any evidence of tampering.[56]

The disks are sealed generally within a day or two of the conclusion of the interceptions.[57] However, sometimes, delays occur. Wiggins typically contacts Stone the morning after an interception concludes to confirm Stone is aware of the conclusion of the interceptions and to inquire about when Wiggins can expect the recordings disk to arrive in Montgomery. (Doc. No. 202, Tr. 42.)

---

[47] (Doc. No. 202, Tr. 25, 80; Gov. Ex. 5, SEALED.) December 11, 2021 was a Saturday. (Doc. No. 202, Tr. 80.)
[48] (Doc. No. 202, Tr. 35, 78.)
[49] (Doc. No. 202, Tr. 35, 78; Gov. Ex. 6, SEALED.)
[50] (Doc. No. 202, Tr. 35-36; Gov. Ex. 8, SEALED.)
[51] (Doc. No. 202, Tr. 36, 79.)
[52] (Doc. No. 202, Tr. 36, 78-79; Gov. Ex. 9, SEALED.)
[53] (Doc. No. 202, Tr. 37; Gov. Ex. 11, SEALED.)
[54] (Doc. No. 202, Tr. 37, 79.)
[55] (Doc. No. 202, Tr. 37-38, 79; Gov. Ex. 12, SEALED.)
[56] (Doc. No. 202, Tr. 33.)
[57] (Doc. No. 202, Tr. 38.)

On February 25, 2022, Wiggins communicated with the federal prosecutor handling the case at that time concerning a delay in receiving the disk of interceptions for the Fourth Authorization.[58] Wiggins informed the federal prosecutor Stone was flying back to New Orleans that day[59] and "will get them out today if he's able to, but I wouldn't bet the farm on it."[60] Three days later, on February 28, 2022, Wiggins advised the federal prosecutor that Stone "says he sent them Friday, I don't have them yet."[61] On March 1, 2022, Wiggins informed the federal prosecutor, "Disks are delayed by FedEx. Supposed to have been delivered yesterday. Hopefully today, but I do not have them yet."[62] Later that day, Wiggins received the disks from FedEx.[63]

### III.    DISCUSSION

A. <u>Motion to Suppress and Responses</u>

In his motion to suppress, Tennille sought suppression of the communications seized from Target Telephones 2, 3 and 4. Tennille argued the Government failed to seal and failed to seal immediately said communications. In addition, Tennille sought suppression of specific interceptions from Target Telephone 2, which allegedly belonged to him, due to the poor quality of the recordings. Tennille argued the recordings had been fabricated,

---

[58] (Doc. No. 202, Tr. 40-41.)
[59] Wiggins believed Stone was on work-related travel and stated it is not uncommon for Stone to travel to other DEA offices. (Doc. No. 202, Tr. 102-103.)
[60] (Doc. No. 202, Tr. 41.)
[61] (Doc. No. 202, Tr. 41-42; Gov. Ex. 14, SEALED.)
[62] (Doc. No. 202, Tr. 43; Gov. Ex. 14, SEALED.)
[63] (Doc. No. 202, Tr. 43; Gov. Ex. 14, SEALED.)

altered or tampered with, and reserved the right to supplement his motion with an affidavit from a voice recognition expert.

In its written response, the Government argued Tennille does not have standing to challenge the First Authorization or Fourth Authorization because he was not a participant in any conversations intercepted in those authorizations, nor did any interceptions occur on his premises. The Government contended it complied with the sealing requirements for Title III interceptions. The Government admitted it inadvertently failed to provide all the Title III applications and orders to seal to Tennille prior to the filing of the motion to suppress. The Government asserted it now had provided all the Title III applications and orders to seal to Tennille, thus the court should reject this argument. Finally, the Government contended the quality of the interception recordings is not relevant to the issue of suppression but is an issue for trial.

In his written reply, Tennille confirmed the Government had provided supplemental discovery since the filing of his motion, including copies of the Title III motions to seal and orders to seal the interceptions. Tennille argued the intercepted communications from the Second, Third and Fourth Authorizations should be suppressed due to the Government's six-day delay in sealing the original disk from the Second Authorization. As to standing, Tennille restated the Government's argument but did not make any arguments in opposition. Finally, Tennille claimed the integrity of the recordings is properly before the court in his motion to suppress because his expert found the recordings to be lacking in quality. Tennille did not provide a copy of his expert's report.

During the hearing, Tennille advised the court he was unable to produce an expert report in support of his argument challenging the integrity of recordings.[64] In addition, Tennille orally amended his motion to suppress to include Target Telephone 1.[65] In other words, Tennille argued he had standing to challenge the communications intercepted from all four Title III authorizations. Tennille further argued the Government delayed sealing three out of the four authorizations[66] and has not offered a satisfactory explanation for the delays.[67] Tennille asserted all Title III recordings should be suppressed.[68]

During the hearing, the Government argued Tennille does not have standing to challenge the First Authorization and Fourth Authorization. The Government contended no interceptions should be suppressed because there was a satisfactory explanation for the delays, there was no tampering during the delays, and the delays did not result in any tactical advantage for the Government.[69] The Government argued the delays resulted due to the process of compiling the data on a disk in one state and relying on FedEx to transport the disk to another state in a timely manner.[70]

---

[64] (Doc. No. 202, Tr. 3-4.)

[65] (Doc. No. 202, Tr. 6-7.) In light of the Government's admitted delay in disclosing the relevant Title III documents to Tennille, the undersigned allowed Tennille to amend his suppression motion. (Doc. No. 202, Tr. 15-16, 18.) Tennille attempted to reach an agreement with the Government not to use the interceptions from the First Authorization and Fourth Authorization against him at trial, but the Government declined. (Doc. No. 202, Tr. 4-5.)

[66] Tennille admits there was no delay in sealing the Third Authorization. (Doc. No. 202, Tr. 111.)

[67] (Doc. No. 202, Tr. 110.)

[68] Tennille argued all intercepted evidence should be suppress due to the sealing delays or "because they're derivatives of the prior authorization." (Doc. No. 202, Tr. 111.)

[69] (Doc. No. 202, Tr. 118-126.)

[70] (Doc. No. 202, Tr. 128-132.)

During the hearing, Tennille replied the Government did not provide a reason for the delays because it failed to provide testimony from an employee in the DEA New Orleans office.[71] Tennille argued the motion to suppress, as amended, should be granted.

After the hearing, the Government filed a supplemental brief wherein it asserted the same arguments made in the hearing and provided supporting case law.

B. <u>Governing Legal Principles</u>

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, effects, against unreasonable searches and seizures.'" *Whren v. United States*, 517 U.S. 806, 809 (1996). The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Ct. of City and Cnty. of S.F.*, 387 U.S. 523, 528 (1967).

"Evidence obtained [under Title III] is subject to the Fourth Amendment's prohibition against unreasonable searches." *United States v. Goldstein*, 989 F.3d 1178, 1192 (11th Cir. 2021) (citation omitted). Hence, "[s]tanding for the purposes of challenging a [Title III interception] is evaluated using the standing principles for Fourth Amendment claims." *United States v. Russell*, No. CR 2:08CR121-WHA WO, 2008 WL 4649051, at *3 (M.D. Ala. Oct. 20, 2008).

"Title III . . . 'regulates the interception of wire, oral, and electronic communications.'" *United States v. Stowers*, 32 F.4th 1054, 1063 (11th Cir. 2022) (quoting

---

[71] (Doc. No. 202, Tr. 127.)

*United States v. Ojeda Rios*, 495 U.S. 257, 259 (1990)). "Generally, evidence gathered from interceptions that violate this statute must be suppressed." *Id*. (citing 18 U.S.C. § 2518(10)(a).

"Title III, Section 2518(8)(a), requires that wiretap recordings 'be made available to the judge issuing [the authorization] order and sealed under his directions.'" *Id*. (citing 18 U.S.C. § 2518(8)(a)). Title III, Section 2518(8)(a) also mandates when Title III recordings must be sealed. That section "requires that the recordings be sealed '[i]mmediately upon the expiration of the period of the order, or extensions thereof.'" *Id*. at 1064 (citing 18 U.S.C. § 2518(8)(a)).

C.  Analysis of the Motion to Suppress

1.  Standing

Title III allows an "aggrieved person" to move to suppress the contents of any wire or oral communications intercepted under the statute, "or evidence derived therefrom." 18 U.S.C. § 2518(10)(a). In order to do so, the defendant must first establish that he was an "aggrieved person." 18 U.S.C. § 2518(10)(a). According to the statute, an aggrieved person is any "person who was a party to an intercepted . . . communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). "To show he is an aggrieved party the claimant must show that he was a party to an intercepted communication, that the government's efforts were directed at him, or that the intercepted communications took place on his premises." *Russell,* 2008 WL 4649051, at *3 (citations omitted). "Additionally, standing is not conferred on co-conspirators or co-defendants who are not parties to or targets of the intercepted communications, merely because they are implicated by the

evidence obtained during the surveillance." *Id.* (citing *United States v. Fredericks*, 586 F.2d 470, 480 (5th Cir. 1978)).

Here, Tennille contends he has standing to challenge all four Title III authorizations, although he was only listed as an interceptee in the Second Authorization and Third Authorization. For the purposes of the motion to suppress, rather than analyzing half of the authorizations to determine if Tennille has standing, the undersigned assumes Tennille has standing to challenge all four Title III authorizations.

The undersigned now turns to address the merits of Tennille's arguments. [72]

2.  Delays in Sealing Title III Recordings

As aforementioned, Title III mandates that the recordings be sealed "immediately upon the expiration of" the order authorizing the interception. 18 U.S.C. § 2518(8)(a)). The Eleventh Circuit has held that

> recordings are sealed "immediately" if they are sealed one or two days after the wiretap order expires. *United States v. Matthews*, 431 F.3d 1296, 1307 (11th Cir. 2005). [The Circuit] explained that "[i]f we interpreted 'immediately' to mean anything less than one or two days, we would essentially transform the statute into a requirement that the Government seal the recordings *before,* rather than 'immediately upon,' the order's expiration." *Id.* Apart from this two-day safe harbor, whether the government has "immediately" presented a wiretap recording to be sealed by a judge will depend on the circumstances.

---

[72] Because standing under the Fourth Amendment is not jurisdictional, the court is not required to address it before reaching the merits of a Fourth Amendment claim. *Terrence Byrd v. United States*, 584 U.S. 395, 410–11 (2018) ("The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits.") (citations omitted).

*Stowers*, 32 F.4th at 1064.

Yet, Title III provides that a delay in sealing the recordings "should be excused if the government provides a 'satisfactory explanation' for the delay." *Stowers*, 32 F.4th at 1065 (citing *Ojeda Rios*, 495 U.S. at 262–63; 18 U.S.C. § 2518(8)(a)). "A 'satisfactory explanation' must be more than a reason for the delay and 'proof of nontampering.'" *Id.* (quoting *Ojeda Rios*, 495 U.S. at 264–65). "Instead, the government must 'explain not only why a delay occurred but also why it is excusable.'" *Id.* (quoting *Ojeda Rios*, 495 U.S. at 265).

Here, Tennille only challenges the delays in sealing the First Authorization, the Second Authorization and the Fourth Authorization. It is undisputed that the sealing of these authorizations was untimely under Title III. The sealing for these authorizations occurred 5 to 6 days after the authorization orders expired, excluding the two-day safe harbor.

Considering the delays in sealing the records for the First Authorization, Second Authorization and Fourth Authorization, the undersigned now turns to the Government's explanation for the delays. The Government contended the delays occurred because (1) the process employed by the DEA in having Stone prepare all the recordings in New Orleans and then ship them overnight to Montgomery using FedEx was complicated and susceptible to delays; (2) occasional delays occurred due to DEA's utilization of FedEx to transport the packages; (3) one delay occurred when Stone was out of town for work-related travel when the Fourth Authorization expired; and (4) during the COVID pandemic,

14

from late 2021 through early 2022, DEA faced staffing challenges concerning telework and remoting working.[73]

The undersigned first considers the two threshold requirements that are "necessary, but not sufficient, to establish that an explanation is satisfactory." *Stowers*, 32 F.4th at 1065 ("To evaluate whether an explanation is 'satisfactory' and whether a delay is 'excusable,' we first assess two threshold requirements that are necessary, but not sufficient, to establish that an explanation is satisfactory."). First, the undersigned must assess whether the integrity of the recordings at issue was preserved. *Id.* (citations omitted) Second, the undersigned must assess whether the Government has acted in good faith. *Id.* (citations omitted). "That means that its proffered reasons must be its actual reasons, . . . and it must have relied on them at the suppression hearing." *Id.* (internal citations omitted). "It also means that any delay-causing mistake must have been an honest one." *Id.* (citations omitted).

Here, the Government has met the two threshold requirements. The Government presented testimony from Wiggins during the suppression hearing establishing the integrity of the recordings have been preserved. They were sealed and remain sealed. The Government also presented testimony from Wiggins that the Government acted in good faith and any mistakes which caused the delays were honest ones. The federal prosecutor repeatedly inquired about the location of the recordings for the Fourth Authorization. That evidence shows the Government acted in good faith in attempting to seal the recordings in

---

[73] (Doc. No. 202, Tr. 43-44.)

a timely fashion as the federal prosecutor took affirmative steps to obtain information concerning the delay. Moreover, the Government showed that FedEx caused some of the delay in one occurrence, which makes it easy for the court to infer that such delay could have been caused by FedEx in another occurrence. Considering all the evidence before the court, the undersigned finds Wiggin's testimony to be credible and reasonable. Consequently, the undersigned finds from Wiggins testimony that the two threshold requirements are satisfied.

Since the Government has met the two threshold requirements, the undersigned must now weigh

> three additional factors to determine whether the government's explanation is satisfactory. [The court must] look to: (1) the length of the delay, . . .; (2) whether the delay gave the government a tactical advantage or prejudiced the defendant, . . .; and (3) whether the government's explanation is objectively reasonable under the circumstances. *See Ojeda Rios*, 495 U.S. at 266–67, 110 S. Ct. 1845. No one factor is dispositive; instead, they must be considered as a composite. And they may overlap. For instance, the longer the delay, the greater the chance of prejudice and the more likely that an explanation is not objectively reasonable. Indeed, there is no stock formula by which the adequacy of an explanation can invariably be gauged ... the trial judge must scrutinize these situations case by case, giving due weight to the factors which [the court has] mentioned and to any other material which bears upon the reasonableness of the conduct under the circumstances. . . .

*Stowers*, 32 F.4th at 1066–67 (internal citations omitted).

Again, the Government has met its burden. The length of delays for all three authorizations at issue were 5-6 days, at most. These short delays are excusable based on the facts before the court. *See Stowers*, 32 F.4th at 1069–1070 (finding a ten-day delay was excused); *Ojeda Rios*, 495 U.S. at 262 (holding a delay of 118 days was excused); *United States v. Reed*, 575 F.3d 900, 914 (9th Cir. 2009) (excusing a six-day delay in sealing Title

III recordings). In addition, the recordings were either sealed by the court the day they were received, or the day after their receipt, by the DEA in Montgomery.[74] No evidence before the court suggests the short delays gave the Government a tactical advantage. Nor does the evidence show that Tennille was prejudiced in any way from the delays.

Finally, the evidence before the court shows the Government's reasons for the delays were objectively reasonable. Although the Government did not present evidence of its reasons for the delays in all three authorizations at issue, the undersigned finds the Government presented a satisfactory explanation. *Cf. United States v. Pedroni,* 958 F.2d 262, 265–66 (9th Cir. 1992) (finding "satisfactory explanation" for fourteen-day delay in sealing tapes made during electronic surveillance based on evidence that integrity of tapes was maintained, and delay was because of responsible FBI agent's heavy workload); *United States v. Scafidi,* 564 F.2d 633, 641 (2d Cir. 1977) (finding a "satisfactory explanation" where seven-day delay in sealing tapes was because of attorney's preoccupation with preparations for the upcoming trial). Wiggins made clear that removing the data off the servers and compiling the data on a disk or disks takes time depending on the quantity of the data, and the movement of packages via FedEx is not within the DEA's control. This evidence suggests the Government's explanation is objectively reasonable. *See United States v. Turner,* No. 22-5046, 2024 WL 3634454, at *7 (6th Cir. Aug. 2, 2024)*, cert. denied sub nom. Stewart v. United States,* 145 S. Ct. 783, 220 L. Ed. 2d 280 (2024)*, and cert. denied sub nom. Bibbs v. United States*, 145 S. Ct. 785, 220 L. Ed. 2d 281 (2024)

---

[74] (Doc. No. 202, Tr. 100-101.)

(finding the district court did not clearly err in concluding "the administrative process necessary to obtain physical copies of the wiretap recordings [was] a 'satisfactory explanation' for a delay of less than one week in sealing the wiretap recordings at issue.").

In light of the Government's good faith, the short delays in sealing the recordings, the absence of tampering, the lack of tactical advantage to the Government or prejudice to Tennille, and the objective reasonableness of the actions of the federal prosecutor and DEA staff, the undersigned finds the Government has provided a satisfactory explanation for the delays in sealing the First Authorization, Second Authorization and Fourth Authorization. The requirements under 18 U.S.C. § 2518(8)(a) are satisfied.

3. Integrity of Recordings

Tennille argued without any support that the integrity of the Title III recordings had been compromised because his voice recognition expert concluded the audio recordings of Tennille's alleged voice were of a quality that rendered voice recognition impossible. At the hearing, Tennille advised the court he was unable to produce an expert report in support of his argument.[75]

Tennille's argument is unavailing. At the hearing, the Government presented testimony from Wiggins that he received the disks through the usual process from Stone, the disks were sealed when he received them and were sealed again through the process with the court. Wiggins further testified the seals for the four disks remain intact and do not show any evidence of tampering. Tennille has presented no evidence – only conjecture–

---

[75] (Doc. No. 202, Tr. 3-4.)

regarding tampering of the evidence by the Government. The undersigned is unpersuaded by Tennille's conjecture.

Accordingly, the motion to suppress is due to be denied.

## IV.    CONCLUSION

For the reasons stated above, Magistrate Judge RECOMMENDS Defendant's motion to suppress, as amended, (Doc. No. 117) be DENIED.

It is further ORDERED that the parties shall file any objections to the said Recommendation not later than **May 27, 2025.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of May, 2025.

_____

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE