IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>TERRANCE TOBIAS TENNILLE,<br><br>*Defendant.* | CRIMINAL ACTION NO.<br>3:24-cr-00286-TES-JTA-7 |

**ORDER ADOPTING IN PART THE UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the United States Magistrate Judge's Report and Recommendation ("R&R") [Doc. 275] to deny Defendant Terrance Tobias Tennille's orally amended Motion to Suppress [Doc. 117]. Pursuant to 28 U.S.C. § 636(b)(1)(C) Tennille filed an Objection [Doc. 291] to some, but not all, of the Magistrate Judge's R&R. Therefore, the Court only "make[s] a de novo determination of those portions" of the R&R to which Tennille objected. 28 U.S.C. § 636(b)(1)(C). All other portions are reviewed for clear error. *Id.* at § 636(b)(1)(A).

Through his amended motion to suppress, Tennille seeks to suppress certain wire and electronic communications intercepted by the Drug Enforcement Administration ("DEA") pursuant to court orders issued under Title III of the Omnibus Crime Control and Safe Street Act of 1968 ("Title III"). While the procedural history and facts are more fully presented in the Magistrate Judge's R&R, Tennille argues that the

government violated 18 U.S.C. § 2518(8)(a) because it failed to "immediately" seal the recordings "upon the expiration of the period" authorized by the court's orders.[1] 18 U.S.C. § 2518(8)(a); [Doc. 117, p. 1]; [Doc. 275, pp. 1–8]; *see United States v. Stowers*, 32 F.4th 1054, 1065 (11th Cir. 2022) ("Generally, evidence gathered from interceptions that violate [18 U.S.C. § 2518(8)(a)] must be suppressed."). In the Eleventh Circuit, wiretap "recordings are sealed 'immediately'"—in accordance with § 2518(8)(a)—"if they are sealed one or two days after the wiretap [authorization] order expires." *Stowers*, 32 F.4th at 1064 (citing *United States v. Matthews*, 431 F.3d 1296, 1307 (11th Cir. 2005)); [Doc. 275, p. 13 (quoting 18 U.S.C. § 2518(8)(a))].

To be sure, "[i]t is undisputed" that three of the four wiretap recordings in this case—recordings from the First, Second, and Fourth Authorizations—were not timely sealed under Title III. [Doc. 275, p. 14]. Thus, the issue for the Court is whether the Magistrate Judge erred in her conclusion that the government provided a "satisfactory explanation" for the sealing delays for each recording. *United States v. Ojeda Rios*, 495 U.S. 257, 265 (1990); [Doc. 275, p. 18]. More than that—consistent with the government's, the Magistrate Judge's, and Tennille's positions on the relevant law—"the government must 'explain not only why a delay occurred but also why it is excusable.'" [Doc. 192, p. 3 (quoting *Stowers*, 32 F.4th at 1065) (emphasis added)]; [Doc.

---

[1] "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C. § 2518(8)(a).

2

275, p. 14 (quoting same)]; [Doc. 291, p. 2 (quoting same)].

Before addressing the issues before it, the Court quickly notes Tennille's agreement "with the Magistrate[] [Judge's] determination that Tennille has standing to challenge all four Title III authorizations." [Doc. 291, p. 1 (citing [Doc. 275, p. 13])]. Tennille's "agreement," however comes from a misguided interpretation of the Magistrate Judge's R&R. To be clear, the Magistrate Judge stated: "For purposes of the motion to suppress, rather than analyzing half of the authorizations to determine if Tennille has standing, the undersigned *assumes* Tennille has standing to challenge all four Title III authorizations." [Doc. 275, p. 13 (emphasis added)]. Assuming something, purely for the purpose of streamlining or simplifying an analysis, is not a definitive determination. To say that the Magistrate Judge definitively "determine[ed]" that Tennille has standing to challenge all four Title III wiretaps in this case—when she so clearly did not—is simply wrong. That said, in reviewing the R&R, the Court will follow the Magistrate Judge's assumption and likewise *assume* that Tennille has standing to challenge "all four" Title III authorizations, but in doing so, it points out the following exchange from the suppression hearing:

> MR. ANDREU:    . . . The government is not committing to not using interceptions from what we're calling authorization one and authorization four at trial.
>
>    However, that's not the question when it comes to standing. The question is whether . . . the defendant is an aggrieved person on those -- as to those authorizations. And he's not because he was not

3

>                          intercepted over either of those authorizations. The
>                          communications on those calls are, arguably,
>                          statements by coconspirators in furtherance of the
>                          conspiracy and may be admissible against the
>                          defendant at trial, even though he does not have
>                          standing to challenge them.
>
> THE COURT:               So is the government taking the position that . . .
>                          Tennille does not have standing to challenge any of the
>                          authorizations?
>
> MR. ANDREU:              No, ma'am. The government is taking the position that
>                          . . . Tennille does not have standing to challenge
>                          authorization number one and authorization number
>                          four. I think the testimony is going to be that . . .
>                          Tennille was only intercepted on calls over target
>                          telephone two, and target telephone two --
>                          interceptions over target telephone two were
>                          authorized pursuant to the second and third
>                          authorization.

[Doc. 202, Transcript of Proceeding, p. 5:4–25].

    A.    **<u>Tennille's Objection [Doc. 291]</u>**

Now, as to his Objection, Tennille stresses that Montgomery-based DEA Task Force Officer Ethan Wiggins cannot offer testimony accounting for the sealing delays that occurred within the DEA's office in New Orleans, Louisiana—where Title III interceptions for Alabama, Mississippi, Louisiana, and Arkansas are conducted and maintained. [Doc. 275, pp. 2, 5]; [Doc. 291, p. 4 ("Tennille contends that the cause of the delays for sealing [the intercepted communications] in this case has its genesis in the New Orleans Office.")]. Arguing that Wiggins has no credibility to testify about the operations in New Orleans office, Tennille contends that the Magistrate Judge erred in

4

her conclusion that the government "presented a satisfactory explanation" for the sealing delays. [Doc. 291, p. 3 (quoting [Doc. 275, p. 17])]; *see also* [Doc. 275, p. 11]. The Court doesn't wholly disagree.

That said, though, the issue isn't as narrow as whether there is someone more suitable to testify about the New Orleans operations. It's whether there is *evidence* on the record accounting for a satisfactory explanation with respect to the relevant Title III wiretaps that is sufficient to excuse a sealing delay. *See Stowers*, 32 F.4th at 1065. And here, as the Court will explain, there isn't any evidence with respect to the sealing delay for the Second Authorization. Now, that's part and parcel to the fact that Tennille orally amended his motion to suppress at the start of the hearing, which, in turn, required supplemental briefing. Then, the evidence that needed to be offered as a result of that briefing with respect to the Second Authorization couldn't be properly offered. *See, e.g.*, [Doc. 192, p. 7 ("The government also provided evidence—albeit from a separate authorization period under this same case—that other slight delays are bound to occur at times.")]. So, the Court, pursuant to § 636(b)(1)(C), will "receive further evidence" as to the delay associated with the Second Authorization for the reasons explained below.

    1.    **Clear Error Review**

Some small housekeeping matters first. Although there are four Title III wiretap authorizations of concern in this case, the Court must only address post-R&R arguments with respect to the First and Second Authorizations. In other words, Tennille

only objects to the Magistrate Judge's recommendations for those specific authorizations, and only those are subject to de novo review. [Doc. 291, p. 7 (Tennille's argument that "[t]he [g]overnment failed to provide evidence of the actual cause of [the] sealing delays for the First and Second Authorizations.")]; *see also* [Doc. 291, pp. 7–10]. Tennille makes no substantive arguments in his Objection concerning the Magistrate Judge's recommendations on the Third and Fourth Authorizations. Thus, as to the Third and Fourth Authorizations, the Court only reviews the Magistrate Judge's R&R to determine whether it is "clearly erroneous or contrary to law."[2] 28 U.S.C. § 636(b)(1)(A).

Regarding the Third Authorization, it covered a 30-day period from Monday, December 27, 2021, to Wednesday, January 26, 2022. *See* 18 U.S.C. § 2518(5) ("No order entered under this section may authorize or approve the interception of any wire, oral, or electronic communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days."). As noted by the Magistrate Judge, "Title III mandates that the recordings be sealed 'immediately upon the expiration of' the order authorizing the interception." [Doc. 275, p. 13 (quoting

---

[2] Moreover, Tennille very well may have foregone any efforts to challenge the integrity of the Title III wiretap recordings though a voice recognition expert since he failed to produce an expert report or affidavit during the suppression hearing and failed to provide any further argument about a voice recognition expert in his Objection. Fed. R. Crim. P. 16(b)(1)(C), 47(d); *see Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) ("We have long held that [a party] abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); [Doc. 82, p. 3]; [Doc. 275, p. 18]; M.D. Ala. LCrR 16.1(a)(4).

18 U.S.C. § 2518(8)(a))]. And again, "immediately," means within "one or two days after the wiretap [authorization] order expires." *Stowers*, 32 F.4th at 1064 (citing *Matthews*, 431 F.3d at 1307).

Here, since the evidence shows that the authorizing judge sealed the recording from the Third Authorization on January 28, 2022, Tennille rightfully doesn't raise any sealing-delay challenge. *See* [Doc. 275, p. 14]; [Doc. 291, p. 4 (Tennille's argument that only "[t]hree of the four authorized wiretaps had delayed sealings for their recordings")]; [Doc. 202, Transcript of Proceeding, p. 14:13–14]. Easily enough, in reviewing the Magistrate Judge's R&R with respect to the Third Authorization, the Court sees no clear error. 28 U.S.C. § 636(b)(1)(A).

For the Fourth Authorization, Tennille doesn't object to the Magistrate Judge's R&R or, more specifically, to her factual findings as to what caused the sealing delay and the excusable reasons for it. *See generally* [Doc. 291]; *see also* [Doc. 275, pp. 8, 15–16]. Fact is, Tennille only mentions the Fourth Authorization as means to object to the Magistrate Judge's use of and reliance on the government's explanation for *that* sealing delay as a basis to "eas[ily] . . . infer" an excusable delay with respect to the Second. [Doc. 291, p. 4].

Put simply, in the post-R&R opportunity to further challenge the delay for the Fourth Authorization provided to him by § 636(b)(1)(C), Tennille doesn't raise any objection to the Magistrate Judge's factual findings or her analysis. *See generally* [Doc.

7

291]. With respect to the Fourth Authorization, the Magistrate Judge relies on, *inter alia*, Wiggins' testimony that he informed the federal prosecutor that the recording's delivery was "delayed by FedEx."[3] [Doc. 275, p. 8]; *see also* [Doc. 202, Transcript of Proceeding, p. 43:4–8]. Based on this communication and other repeated inquires between the federal prosecutor and Wiggins, the Magistrate Judge found that the government "acted in good faith" because of the "affirmative steps" taken to obtain information concerning the delay with respect to the Fourth Authorization. [Doc. 275, pp. 8, 15–16]. The Court agrees.

In its review of the Magistrate Judge's R&R, the Court sees no clear error with respect to her reasoning or analysis on the Fourth Authorization. 28 U.S.C. § 636(b)(1)(A). The government has provided a "satisfactory explanation" sufficient to excuse the Fourth Authorization's sealing delay. *Ojeda Rios*, 495 U.S. at 265 ("We conclude that the 'satisfactory explanation' language in § 2518(8)(a) must be understood to require that the [g]overnment explain not only why a delay occurred but also why it is excusable.").

  **2.  De Novo Review**

With that, the only things left for the Court to consider subject to de novo review are the specific arguments Tennille lodged in his Objection against the Magistrate

---

[3] Wiggins testimony also discussed "staffing challenges" for the DEA within the relevant period. [Doc. 202, Transcript of Proceeding, pp. 43:19—44:2].

Judge's recommendations as to the First and Second Authorizations. 28 U.S.C. § 636(b)(1)(C). To recap, Title III wiretap recordings must be sealed immediately—within "one or two days" in this Circuit—after the order authorizing the interception expires. 18 U.S.C. § 2518(8)(a); *Matthews*, 431 F.3d at 1307.

As to the First Authorization period (from Friday, September 17, 2021, to Saturday, October 16, 2021), the evidence shows that it expired on Saturday, October 16, 2021, and the authorizing judge sealed it five days later—on Thursday, October 21, 2021. According to Wiggins' testimony, the person responsible for all interceptions received in the New Orleans office, Verdell Stone, "places the original [recording] into an evidence bag, seals the bag, and then mails the [recording] overnight via FedEx to the appropriate field office." [Doc. 275, p. 6]. Notwithstanding the five-day delay (excluding the two-day safe harbor, *see Stowers*, 32 F.4th at 1067) for the First Authorization, the Court is unaware of anything that requires DEA employees (like Mr. Stone) to work on weekends, so that would mean the next working business day fell on Monday, October 18, 2021. Here, Wiggins received the recording from the First Authorization on October 20, 2021. [Doc. 291, p. 7]. That leaves just a tiny, one-day window (from Monday, October 18, 2021, to Tuesday, October 19, 2021) to account for. From Wiggins' testimony, the Magistrate Judge noted that compiling the recordings "takes time depending on the quantity of the data[.]" [Doc. 275, p. 17]; *see also* [Doc. 202, Transcript of Proceeding, p. 38:14–17]. Mr. Stone would've had access to the completed

First Authorization on Monday, October 18, 2021, Wiggins received it on October 20, 2021, and the authorizing judge sealed it on October 21, 2021. Based on that, the Court agrees with the Magistrate Judge that the government presented a sufficient explanation as to why the five-day sealing delay for the First Authorization is excusable. *Ojeda Rios*, 495 U.S. at 265.

As to the Second, that authorization period covered Friday, November 12, 2021, to Saturday, December 11, 2021. Again, the Court is unaware of anything that requires Mr. Stone to work on weekends, so that would mean his next working business day fell on Monday, December 13, 2021. Wiggins testified that he received the recording from the Second Authorization for sealing on December 16, 2021, and the authorizing judge sealed it on December 17, 2021. [Doc. 291, p. 7]. So, from December 11, 2021, to the sealing date for the Second Authorization, there is a six-day delay (excluding the two-day safe harbor, *see Stowers*, 32 F.4th at 1067) for which the government must provide an excusable explanation. 18 U.S.C. § 2518(8)(a); *Ojeda Rios*, 495 U.S. at 65. However, when it comes to the delay for the Second Authorization, the government's explanation seems non-existent.

While the government argues that it "provided a 'satisfactory explanation' for the delay in sealing" the Second Authorization, the Court thinks more concrete evidence can be offered to support that proffered explanation. [Doc. 192, p. 7 ("The government also provided evidence—albeit from a separate authorization period under

10

this same case—that other slight delays are bound to occur at times. For instance, there was a delay in sealing recordings from the Fourth Authorization due to Mr. Stone's travel schedule, as well as an unexpected delay by FedEx.")]. Without any real explanation from the government as to the delay for the Second Authorization, it appears that the Magistrate Judge "infer[red]" that because FedEx caused a delay with respect to the Fourth Authorization, a "delay could have been caused by FedEx" for another authorization. [Doc. 275, p. 16]. In doing so, the Magistrate Judge recommended: "Although the [g]overnment did not present evidence of its reasons for the delays in all three authorizations at issue, the undersigned finds the [g]overnment presented a satisfactory explanation." [*Id.* at p. 17]. Now, that's not to say that the Magistrate Judge's inference isn't correct, but to be safe, the Court will "receive further evidence" as to the delay associated with the Second Authorization. 28 U.S.C. § 636(b)(1)(C).

The cases cited by the Magistrate Judge to support her recommendation that the government "presented a satisfactory explanation" "in all three authorizations at issue," include a "because"—that is, a reason for a sealing delay. *See, e.g.*, [Doc. 275, p. 17 (first citing *United States v. Pedroni*, 958 F.2d 262, 265–66 (9th Cir. 1992) (finding "satisfactory explanation" for fourteen-day delay in sealing tapes made during electronic surveillance based on evidence that integrity of tapes was maintained, and delay was ***because*** of responsible FBI agent's heavy workload)); and then citing *United States v.*

11

*Scafidi*, 564 F.2d 633, 641 (2d Cir. 1977) (finding a "satisfactory explanation" where seven-day delay in sealing tapes was *because* of attorney's preoccupation with preparations for the upcoming trial))]. And while we have a sufficient "because" for the First and Fourth Authorizations, the government didn't offer one for the Second. The Court is somewhat leery about relying on speculation that just because FedEx caused a delay here, it caused a delay there. Simply put, at this juncture the government simply failed to "explain . . . why a delay occurred" for the Second Authorization or "why it is excusable," and it must do so. *Ojeda Rios*, 495 U.S. at 265. As the record currently stands, there is nothing to satisfactorily explain—let alone excuse—the six-day delay in sealing the recording from the Second Authorization, and the Court cannot adopt the Magistrate Judge's reasoning as to that authorization on this limited record.

### B. Conclusion

Accordingly, as set out above, the Court **ADOPTS in part** the United States Magistrate Judge's Report and Recommendation [Doc. 275]. The Court **ADOPTS** the United States Magistrate Judge's R&R with respect to the First, Third, and Fourth Authorizations **AND MAKES IT THE ORDER OF THE COURT**. However, the Court **DEFERS RULING** as to whether Tennille's motion to suppress will be denied in full until after the hearing at *9:30 a.m.* on *June 16, 2025*, in Opelika, Alabama. During that hearing, the Court will receive evidence on whether the government can provide an objectively reasonable explanation for "why a [six-day] delay occurred [and] why it is

excusable" with respect to the Second Authorization. *Id.* at 265–67.

**SO ORDERED**, this 6th day of June, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**
